Nicholas A. Coulson, Esq. (SBN 358903)
nick@coulsonpc.com
COULSON P.C.
13101 Washington Blvd., Suite 244
Los Angeles, California 90066
Tel: (313) 644-2685

*Counsel for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**DAVID GAINES**, on behalf of himself and all others similarly situated,

Plaintiff,

v.

**MEETINGTV, INC.**,

Defendant.

Case No: 3:26-cv-03696-LL-DDL

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Hon. Linda Lopez
Date: October 2, 2026

Action Filed: June 24, 2026
Trial Date: N/A

COULSON P.C.

COULSON P.C.

## TABLE OF CONTENTS

INTRODUCTION ..... 1
FACTUAL ALLEGATIONS ..... 2
LEGAL STANDARD ..... 5
I. JUDICIAL NOTICE ..... 5
II. MOTION TO DISMISS – FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ..... 5
ARGUMENT ..... 6
I. MEETINGTV'S EXTRINSIC MATERIAL CANNOT BE CONSIDERED IN RESOLVING ITS MOTION TO DISMISS. ..... 6
A. The Exhibits Do Not Qualify for Judicial Notice. ..... 7
B. The Exhibits Do Not Qualify for Incorporation by Reference. ..... 7
C. MeetingTV's Extrinsic Material Cannot Be Used to Dispute Plaintiff's Allegations. ..... 8
II. PLAINTIFF HAS PLAUSIBLY ALLEGED THAT HIS COMMUNICATIONS WERE PRIVATE (FIRST, SECOND, THIRD, FOURTH, SIXTH, AND SEVENTH CAUSES OF ACTION). ..... 9
A. Applicable Legal Standards Regarding Privacy. ..... 9
B. Plaintiff Has Plausibly Alleged that His Meeting Was Not "Readily Accessible to the General Public" for Purposes of the ECPA. ..... 10
C. Plaintiff Had an Objectively Reasonable Expectation That His Meeting Was Not Being Overheard or Recorded for Purposes of § 632 of CIPA. ..... 11
D. Plaintiff Has Plausibly Alleged That He Had a Reasonable Expectation of Privacy in His Meeting for the CIPA and California Constitutional and Common Law Invasion of Privacy Claims. ..... 12
III. PLAINTIFF HAS PLAUSIBLY ALLEGED AN INTERCEPTION UNDER ECPA AND CIPA (FIRST, SECOND, AND THIRD CAUSES OF ACTION). ..... 16
IV. PLAINTIFF HAS PLAUSIBLY ALLEGED THAT MEETINGTV WAS NOT A PARTY TO HIS MEETING AND THAT IT DID NOT HAVE PRIOR CONSENT TO INTERCEPT THE COMMUNICATIONS (FIRST, SECOND, AND THIRD CAUSES OF ACTION). ..... 17
A. Plaintiff Has Plausibly Alleged that MeetingTV Was Not a Party to His Private Meeting. ..... 17
B. Even if MeetingTV Could Be Considered a Party, Plaintiff Has Plausibly Alleged the Crime-Tort Exception for Purposes of the ECPA Claim. ..... 19
C. Plaintiff Has Plausibly Alleged that MeetingTV Did Not Have Prior Consent. ..... 20
V. PLAINTIFF HAS PLAUSIBLY ALLEGED VIOLATIONS OF § 631(a) OF CIPA BECAUSE CLAUSES TWO, THREE, AND FOUR ARE NOT LIMITED TO INTERCEPTIONS OF TELEPHONE OR TELEGRAPH WIRES (THIRD CAUSE OF ACTION). ..... 21

VI. PLAINTIFF HAS PLAUSIBLY ALLEGED A VIOLATION OF THE UCL (FIFTH CAUSE OF ACTION). ..... 21

A. Plaintiff Has Plausibly Alleged an Unlawful Business Practices Claim. ..... 22

B. A Legal Violation is Not an Element of Either an Unfair Business Practices or Fraudulent Business Practices Claim. ..... 22

C. Plaintiff Plausibly Alleges He "Lost Money or Property" For Purposes of Standing Under the UCL. ..... 22

VII. PLAINTIFF HAS PLAUSIBLY ALLEGED A PUBLIC DISCLOSURE OF PRIVATE FACTS CLAIM (SEVENTH CAUSE OF ACTION). ..... 23

VIII. IF ANY CLAIM REQUIRES DISMISSAL, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND. ..... 25

CONCLUSION ..... 25

COULSON P.C.

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Breaking Code Silence v. Papciak*,
No. 21-cv-00918-BAS-DEB, 2022 U.S. Dist. LEXIS 25525 (S.D. Cal. Feb. 11, 2022) .......... 7

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 16

*Caldwell v. Caldwell*,
No. C 05-4166 PJH, 2006 U.S. Dist. LEXIS 13688 (N.D. Cal. Mar. 13, 2006) .......... 7

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 23

*Correia v. Lulu & Ga., Inc.*,
No. 3:26-cv-01186-GPC-JLB,
2026 U.S. Dist. LEXIS 184095 (S.D. Cal. Aug. 12, 2026) .......... 11

*Coverstone v. Davies*,
38 Cal. 2d 315 (1952) .......... 24

*D'Angelo v. Penny Opco, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023) .......... 16

*Dietemann v. Time, Inc.*,
449 F.2d 245 (9th Cir. 1971) .......... 12, 13

*Doe v. Bonta*,
101 F.4th 633 (9th Cir. 2024) .......... 15

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) .......... 22

*Epperson v. Gen. Motors, LLC*,
706 F. Supp. 3d 1031 (S.D. Cal. 2023) .......... 22

*Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS-KSC,
2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) .......... 16

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 13, 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 17, 18



COULSON P.C.

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........................................................................................10

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .....................................................................6, 8

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........................................................................................10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........................................................................................10

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003) ........................................................................................25

*Jackson v. Mayweather*,
10 Cal. App. 5th 1240 (2017) ........................................................................................24

*Javier v. Assurance IQ, LLC,*No. 21-16351,
2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ............................................ 19-21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................................5, 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........................................................................................11, 16

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........................................................................................ 22-23

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 107918 (N.D. Cal. Aug. 12, 2016)......21

*M.D. v. Google LLC*,
No. 24-cv-06369-AMO, 2025 U.S. Dist. LEXIS 187242 (N.D. Cal. Sept. 23, 2025) ........8

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........................................................................................23

*M.G. v. Time Warner, Inc.*,
89 Cal. App. 4th 623 (2001) ........................................................................................24

*Moreno v. Hanford Sentinel, Inc.*,
172 Cal. App. 4th 1125 (2009) ........................................................................................14, 24

*In re Otter.ai Priv. Litig.,*No. 25-cv-06911-EKL,
2026 U.S. Dist. LEXIS 181703 (N.D. Cal. Aug. 13, 2026) ................................ 12, 18-19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........................................................................................19

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) ........................................................................................20



COULSON P.C.

*Sanders v. Am. Broad. Cos.*,
20 Cal. 4th 907 (1999) .......... 12-14

*Sanders v. Kennedy*,
794 F.2d 478 (9th Cir. 1986) .......... 5

*Snow v. DirecTV, Inc.*,
450 F.3d 1314 (11th Cir. 2006) .......... 11

*Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725-BAS-WVG, 2022 U.S. Dist. LEXIS 208345 (S.D. Cal. Nov. 16, 2022) .......... 23

*TBG Ins. Servs. Corp. v. Superior Court*,
96 Cal. App. 4th 443 (2002) .......... 14

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 6, 8

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......... 14

*Walls v. City of Petersburg*,
895 F.2d 188 (4th Cir. 1990) .......... 15

*Wright v. TrueCare Prop. Holdings, LLC*,
No. 3:25-cv-00786-JES-BLM,
2025 U.S. Dist. LEXIS 229707 (S.D. Cal. Nov. 21, 2025) .......... 18

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 18

**STATUTES**

*18 U.S.C. § 2511(2)(g)*(i) .......... 9

*18 U.S.C. § 2511(2)(d)* .......... 17, 19-20

*Cal. Penal Code § 631(a)* .......... 9, 16, 19-21

*Cal. Penal Code § 632(a)* .......... 10-12, 19, 21

*Cal. Penal Code § 632(c)* .......... 10

**RULES**

*Fed. R. Civ. P. 9(b)* .......... 20, 22

*Fed. R. Civ. P. 12(b)(6)* .......... 5, 6, 25

*Fed. R. Civ. P. 15(a)*(2) .......... 25

*Fed. R. Evid. 201(b)* .......... 5, 7

COULSON P.C.

COULSON P.C.

# INTRODUCTION

Defendant MeetingTV operates a mass surveillance enterprise that records the private conversations of unsuspecting people in virtual meetings to—of all things—boost its "webinar" platform. MeetingTV's Motion to Dismiss ("Motion") is another act of obfuscation that, like its clandestine surveillance practices, is intended to ensure its victims never obtain redress and allow it to continue secretly exploiting people's privacy.

To defend the indefensible, the Motion resorts to improper extrinsic evidence, misleading claims, misrepresented elements and standards, and mischaracterized allegations, all intended to distract the Court from MeetingTV's detestable conduct at the core of this case: its large-scale, surreptitious and deceptive infiltration, recording, and publication of individuals' private conversations for profit. Its conduct degrades foundational principles and norms of privacy on the Internet, and left unchecked, will eviscerate them.

Rather than address Plaintiff's First Amended Complaint ("FAC")[1], MeetingTV attacks an alternative narrative of its own creation. Tellingly, MeetingTV cites specific allegations in the FAC a mere five times in its argument. The Motion instead props up and misrepresents out-of-context facts within improper, cherry-picked extrinsic material to try to refute Plaintiff's well-pled allegations and resolve disputed factual issues.

MeetingTV's claims that it was a party to Plaintiff's meeting and that Plaintiff did not have a reasonable expectation of privacy are facially absurd. One cannot manufacture party status by circumventing a meeting's security protocols to gain access. Nor can it rely on the novelty of its intrusion methods to claim a meeting was not private. Plaintiff had a reasonable expectation that a commercial "webinar" entity would not use clandestine software to intentionally bypass his virtual meeting's security controls, secretly record his meeting, and then publish the

[1] Plaintiff cites to the FAC using "¶."

intimate details of vulnerable children's and families' struggles on its public platform, now brazenly repackaged as a "webinar." So did all of MeetingTV's other victims. No person could reasonably anticipate such an offensive scheme.

MeetingTV's other arguments as to Plaintiff's failure to state a claim are similarly unfounded. The FAC details how MeetingTV deceptively intercepts, records, and publishes the private communications of ordinary people without their knowledge or consent. Plaintiff describes his own experience with MeetingTV thoroughly and plausibly alleges that it intercepted his sensitive communications and invaded his privacy. MeetingTV's attempts to dismiss these claims do not account for the well-pleaded facts in the FAC and the reasonable inferences to be drawn from them.

Plaintiff has sufficiently alleged all seven causes of action. Private virtual meetings are not fodder for any commercial entity that can figure out how to break into them. The Court should reject MeetingTV's efforts to confuse the issues and deny its Request for Judicial Notice and Motion to Dismiss in their entirety.

## FACTUAL ALLEGATIONS

MeetingTV, doing business as WebinarTV, operates a mass surveillance-for-profit scheme under the guise of a "webinar" hosting business. The WebinarTV platform (the "Platform") is built on the systematic, secret interception of private virtual meetings—meetings that, by MeetingTV's own published descriptions, are private and never intended for public consumption. ¶¶ 20, 27-28. MeetingTV has turned other people's private conversations into a business, and has done so at a staggering scale: as of the filing of the operative complaint, the Platform advertised more than 249,000 recordings, growing by several hundred new "webinars" every day. ¶¶ 23-24.

MeetingTV's interception methods are deliberate and calculated to evade detection. It scrapes the internet for virtual meetings, then infiltrates them by circumventing the privacy protections hosts put in place to keep unwanted attendees

COULSON P.C.

out. ¶¶ 34-35. Once inside, MeetingTV deploys covert recording tools designed to avoid notifications in the meeting. ¶¶ 36-37, 68. Participants who believe they are speaking in confidence are instead silently recorded: their faces, voices, names, and words captured without their knowledge, then repackaged with AI-generated features and posted publicly. ¶¶ 38-39, 44-45. MeetingTV has exploited, among others, addiction recovery support groups, patient and caregiver support sessions, shareholder briefings, and institutional meetings. These are gatherings no reasonable person would expect to be infiltrated by a commercial "webinar" company to become broadcast content. ¶¶ 42-43, 60.

When people eventually learn MeetingTV intercepted their meeting—although many never do—it is only because MeetingTV emails the host after publishing it to solicit them for marketing services built from their own stolen meeting content. ¶¶ 46-48, 136-137. MeetingTV publicly tells victims that they need not "engage in a formal process or use an attorney" to remove the recording, a tacit admission that it anticipated, and sought to head off, the very legal accountability this action now seeks. ¶¶ 52-53. Its victims are broadly offended and outraged, and try to warn others about MeetingTV. ¶ 73.

MeetingTV's conduct has been independently documented by various institutions. ¶¶ 56, 64-69. When confronted by journalists, MeetingTV's founder and CEO, Michael Robertson, falsely claimed that MeetingTV "asks every single person for permission" before recording—a denial squarely contradicted by investigative reports and the mountain of victim complaints. ¶ 61. Even a brief review of the Platform's catalog exposes the falsity of that denial. It hosts recordings expressly marked confidential, explicitly prohibiting recording or sharing, and facially limited to private groups. ¶¶ 77-82. This content, on its face, could not have been lawfully obtained through any legitimate process. ¶¶ 78, 81.

Plaintiff Gaines' own experience illustrates what is at stake. Gaines is the founder and CEO of a Northern California nonprofit serving autistic and other

COULSON P.C.

neurodivergent children and their families. ¶ 83. In January 2026, he convened a registration-only, pre-screened virtual meeting for a subset of parents and caregivers in a specific Sacramento-area school district and special education community to speak candidly about their children's disabilities, diagnoses, and struggles within the school system. ¶¶ 83-91. MeetingTV infiltrated that meeting using a false identity and false association with the school district to circumvent Plaintiff's screening process, and then silently recorded every face, every spoken word, and every intimate disclosure those families trusted would remain private. ¶¶ 95-99. Within twenty-four hours, MeetingTV posted the recording to its Platform for anyone with an internet connection to view. ¶¶ 100, 102. Plaintiff learned of the violation only when MeetingTV emailed him to advertise the Platform's "features." ¶¶ 100-102. The private struggles of vulnerable children and families were exposed to the general public so that MeetingTV could grow its Platform and hawk its paid services. ¶¶ 103-104.

MeetingTV's business model is not an accident. The WebinarTV Platform depends on acquiring large volumes of content rapidly and cheaply, and it accomplishes that through unauthorized recordings rather than through any legitimate acquisition processes. ¶ 113. It is also merely the latest chapter in the founder's history of building companies on the unauthorized exploitation of other people's content. ¶¶ 125-129.

The harm inflicted by this scheme is severe, ongoing, and in critical respects, irreversible. MeetingTV has exposed a massive amount of personal information—including biometric identifiers, health information, financial data, and organizational and political affiliations—that, once published online and fed into AI models, can never truly be reclaimed. ¶¶ 133-134. MeetingTV's so-called removal process is illusory: it operates only after the unauthorized recording and publication have already occurred, does nothing to recover copies already downloaded, viewed, or shared, and in many documented instances, is ignored or delayed. ¶¶ 69, 139.

Because virtual-meeting platforms like Zoom have acknowledged they have no technical means of stopping this conduct, and because MeetingTV continues to add hundreds of new stolen recordings to its Platform every day, judicial intervention is the only means left to stop it. ¶¶ 147-148, 151.

## LEGAL STANDARD

### I. JUDICIAL NOTICE

Courts may only take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Facts are indisputable only if they are either (1) "generally known" or (2) "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may judicially notice matters of public record, but generally may not notice "disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

### II. MOTION TO DISMISS – FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must be denied where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations and construes them in the light most favorable to the plaintiff. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

On a motion to dismiss, courts are generally prohibited from considering any material outside the pleadings. *Khoja*, 899 F.3d at 998-99. Under the judicial notice doctrine, a court may take judicial notice of matters of public record on a motion to dismiss, but cannot take judicial notice of disputed facts in such records. *Id.* Under the incorporation by reference doctrine, a court may treat documents as incorporated

into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, even if materials qualify for consideration, it is "improper to assume the truth of an incorporated [or judicially noticed] document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (quoting *Khoja*, 899 F.3d at 1003).

## ARGUMENT

MeetingTV moves to dismiss all of Plaintiff's claims under Rule 12(b)(6), relying on three exhibits that it improperly asks the Court to judicially notice. MeetingTV's Motion and Request for Judicial Notice should be denied in their entirety for the reasons herein. Plaintiff states viable claims under each cause of action.

In order, Plaintiff addresses MeetingTV's: (1) request for judicial notice; (2) "reasonable expectation of privacy" argument (all privacy claims); (3) interception argument (ECPA; CIPA); (4) party and consent arguments (ECPA; CIPA); and (5) the remaining arguments specific to individual claims.

### I. MEETINGTV'S EXTRINSIC MATERIAL CANNOT BE CONSIDERED IN RESOLVING ITS MOTION TO DISMISS.

MeetingTV requests judicial notice of three exhibits attached to the declaration of its founder, arguing that they qualify for judicial notice or incorporation by reference. ECF Nos. 11-2, 11-3; ECF No. 11-2, Exs. 1-3 (collectively, the "Exhibits"). Consideration of the Exhibits is wholly improper under either doctrine.

Exhibit 1 is purportedly a partial screenshot of a Facebook event post. ECF No. 11-2, Ex. 1. Although not shown, MeetingTV requests judicial notice of a link to the registration form, which allowed people to submit their information for



COULSON P.C.

Plaintiff's review and approval. ¶ 89[2], that it asserts is on the page. ECF No. 11-2, ¶¶ 3, 5. Exhibits 2 and 3 are purportedly screenshots of Facebook posts. ECF No. 11-2, Exs. 2-3.

**A. The Exhibits Do Not Qualify for Judicial Notice.**

MeetingTV states, without analysis, that "judicial notice of Plaintiff's social media posts is appropriate." ECF No. 11-3. This argument ignores the standard.

Courts may only take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). None of the Exhibits meet that standard because they are social media posts, which "satisf[y] neither step of the inquiry under Rule 201(b)." *Breaking Code Silence v. Papciak*, No. 21-cv-00918-BAS-DEB, 2022 U.S. Dist. LEXIS 25525, at *7 (S.D. Cal. Feb. 11, 2022) (denying judicial notice of social media posts).

Exhibit 1 also does not qualify for judicial notice because it is a partial screenshot of the post, which materially distorts its meaning and prevents determination of its accuracy. *See Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 U.S. Dist. LEXIS 13688, at *12 (N.D. Cal. Mar. 13, 2006) (in assessing judicial notice request, court determined it could not assess the nature of the facts in the webpage or determine the accuracy of the website without the actual webpages to review). The Court also cannot determine the accuracy of the registration form link because it is not shown in Exhibit 1 and MeetingTV never submitted a copy of the registration form to which it directs. *Id*.

**B. The Exhibits Do Not Qualify for Incorporation by Reference.**

---

[2] This registration form did not provide access to the meeting. Plaintiff reviewed the registration forms to "screen out inappropriate or unintended attendees." ¶¶ 88-89. Registrants received meeting access only after completing the registration and screening processes and receiving Plaintiff's approval. ¶ 89. MeetingTV used a false identity, including falsely attesting to a connection to the intended community in its registration form, to infiltrate the meeting. ¶¶ 95-97, 105-108.



COULSON P.C.

MeetingTV asserts that the Exhibits are incorporated by reference because the FAC "relies so heavily on events surrounding its videoconference, which was promoted via social media platform" and the Exhibits are "relevant to the question of privacy." ECF No. 11-3, PageID.467. That is not even close to the standard. A document's potential relevance to certain issues or claims is not a basis for incorporation by reference. Instead, the complaint must refer extensively to the *document*, or the *document* must form the basis of the claim. *See Ritchie*, 342 F.3d at 908. MeetingTV offers no analysis showing that any Exhibit meets that standard, and plainly none does.

The contents of the Exhibits do not form the basis of any claim, nor are the Exhibits referenced in any sense that could be considered "extensive." The FAC does not cite, quote, or specifically mention any Exhibit. *See Khoja*, 899 F.3d at 1002. The FAC's mention of a "meeting announcement" is insufficient to incorporate Exhibit 1. *See id*. ("mere mention of the existence of a document is insufficient to incorporate the contents of a document") (citation omitted).

If mere relevance were the standard, it would result in an unfair advantage to defendants who could submit material the plaintiff had no opportunity to rebut.

### C. MeetingTV's Extrinsic Material Cannot Be Used to Dispute Plaintiff's Allegations.

In any case, courts may not judicially notice disputed facts or assume the truth of facts within an incorporated document if doing so only serves to dispute facts in a well-pleaded complaint. *Khoja,* 899 F.3d at 999; *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 813. This is exactly what MeetingTV asks the Court to do. It submits the Exhibits to dispute Plaintiff's well-pled factual allegations and to prove its unsupported assertion that the meeting was "public" in a legal sense. ECF No. 11-1, PageID.441, 445, 451 ("judicially noticed facts refute . . . a reasonable expectation of privacy"), 453. Asking the Court to conclude, based on the Exhibits, that Plaintiff's meeting was not private goes "beyond testing the sufficiency of the



COULSON P.C.

claims and into the realm of factual disputes." *Khoja*, 899 F.3d at 1006; *M.D. v. Google LLC*, No. 24-cv-06369-AMO, 2025 U.S. Dist. LEXIS 187242, at *6 (N.D. Cal. Sept. 23, 2025) (doctrines are "not a tool for defendants to short-circuit the resolution of a well-pleaded claim") (citation omitted).

Whether Plaintiff's meeting was private is a fact-specific inquiry inappropriate for resolution on a motion to dismiss a well-pled complaint, and would require the consideration of many facts not presently before the Court, such as the meeting's access-control, screening, and recording measures. This is true even if the Court were to consider the Exhibits, which the law clearly prohibits. The Exhibits do not carry the significance MeetingTV attributes to them,[3] and, even if considered, would be insufficient to warrant dismissal.

## II. PLAINTIFF HAS PLAUSIBLY ALLEGED THAT HIS COMMUNICATIONS WERE PRIVATE (FIRST, SECOND, THIRD, FOURTH, SIXTH, AND SEVENTH CAUSES OF ACTION).

MeetingTV argues Plaintiff's wiretapping and invasion of privacy claims fail for lack of a plausible "reasonable expectation of privacy." ECF No. 11-1, PageID.445-46, 448-49, 450-51, 453-54. That argument rests on improper extrinsic evidence, misstated legal standards, and mischaracterized allegations.

### A. Applicable Legal Standards Regarding Privacy.

ECPA: The ECPA exempts from protection electronic communications that are "readily accessible to the general public." 18 U.S.C. § 2511(2)(g)(i).

[3] For example, MeetingTV characterizes Exhibit 1's text by stating that it "described the event as 'Public – Anyone on or off Facebook.'" ECF No. 11-3, ¶ 1. That designation means only that the Facebook page itself is visible to anyone on or off Facebook, not that the meeting was public. Plaintiff does not concede that the Court should consider extrinsic evidence. Plaintiff raises this point only to illustrate the unreliability of MeetingTV's request and Exhibits.



COULSON P.C.

<u>Section 631 of CIPA</u>: A "confidential" or "private" communication is not an element of § 631. A "reasonable expectation of privacy" can be relevant to establishing Article III standing, but MeetingTV does not make that argument.

<u>Section 632 of CIPA</u>: Section 632 of CIPA requires a "confidential communication," which "means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be *confined to the parties thereto*." Cal. Penal Code § 632(c) (emphasis added). A conversation is confidential under § 632 if a party reasonably expects it is not being overheard or recorded. *Flanagan v. Flanagan,* 27 Cal. 4th 766, 776-77 (2002).

<u>Constitutional and Common Law Invasion of Privacy Claims</u>: California's constitutional and common law invasion of privacy claims likewise require a "reasonable expectation of privacy." *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286-87 (2009). California courts weigh the surrounding circumstances, customs and practices, community norms, and the presence or absence of an opportunity to consent to the challenged intrusion. *Hill v. Nat'l Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 36-37 (1994). This is a mixed question of law and fact, resolvable as a matter of law only "[i]f the undisputed material facts show no reasonable expectation of privacy." *Id.* at 40.

### B. Plaintiff Has Plausibly Alleged that His Meeting Was Not "Readily Accessible to the General Public" for Purposes of the ECPA.

Plaintiff alleges facts in three categories establishing that his meeting was not "readily accessible to the general public" under the ECPA. First, limited audience: Plaintiff alleges that his meeting was intended for individuals with a connection to a specific Sacramento-area school district, not the general public. ¶¶ 84, 86. Second, restricted access: Plaintiff alleges implementing multiple layers of access control measures to "screen out inappropriate or unintended attendees including those without a legitimate connection to the community." ¶¶ 86-89. Interested registrants



COULSON P.C.

were required to fill out a multi-question registration form, including attesting to their connection to the school district, for review. ¶ 89. Registrants received meeting access only after completing the registration process and receiving Plaintiff's approval. ¶ 89. Meeting access information was never posted publicly. *Id*. Third, no recording: Plaintiff prohibited recording and distribution, restricting the meeting's content from being captured or shared beyond intended attendees. ¶ 94.[4]

Together, these allegations more than plausibly plead that the meeting was not readily accessible to the general public. *See Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 872-73, 875 (9th Cir. 2002) (ECPA protects electronic communications "configured to be private"; website at issue was accessible only to users who registered with an eligible name and password); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006) ("a short simple statement that the plaintiff screens the registrants before granting access may have been sufficient to infer that the website was not configured to be readily accessible to the general public.").

### C. Plaintiff Had an Objectively Reasonable Expectation That His Meeting Was Not Being Overheard or Recorded for Purposes of § 632 of CIPA.

For the same reasons stated in Section II.B, Plaintiff also had a reasonable expectation that his meeting would not be overheard or recorded.

---

[4] MeetingTV's repeated characterizations of the meeting as "public," "open," and "with no restrictions" contradict the FAC's well-pled allegations and rest on its improper extrinsic material and mischaracterizations. Even considering the Exhibits, cherry-picked, out-of-context social media posts on a third-party platform cannot establish, as a matter of law, that Plaintiff's meeting was readily accessible to the public or that Plaintiff lacked a reasonable expectation of privacy. Read against the FAC's allegations that the meeting was: (1) access-controlled, (2) held on a different platform, (3) intended for a defined audience that, by definition, excluded MeetingTV, (4) accessed by MeetingTV only by circumventing those security measures, and (5) subject to a prohibition on recording and distribution, it is more than plausible that the meeting was not readily accessible to the public and that Plaintiff had a reasonable expectation of privacy.



COULSON P.C.

Plaintiff further had a reasonable expectation that his meeting would not be recorded, given his explicit prohibition on recording and distribution. ¶ 94. *See Correia v. Lulu & Ga., Inc.*, No. 3:26-cv-01186-GPC-JLB, 2026 U.S. Dist. LEXIS 184095, at *16-17 (S.D. Cal. Aug. 12, 2026) (collecting cases finding reasonable expectation of privacy under § 632(a) if a company states it will not collect information in certain spaces). Plaintiff alleges he advised all participants that recording and redistribution were "expressly prohibited" and that he did not record the meeting. ¶ 93. MeetingTV recorded and distributed the meeting without Plaintiff's knowledge or consent, in express violation of that prohibition. ¶¶ 99-102.

This expectation is reasonable even without absolute confidentiality. *See Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 915 (1999) (reasonable expectation of privacy against electronic recording distinct from reasonable expectation as to confidentiality); *see also Dietemann v. Time, Inc.,* 449 F.2d 245, 246-48 (9th Cir. 1971) (plaintiff had reasonable expectation of privacy from photography and recording even though he had invited the reporters, whose identity he did not know, into his home).

MeetingTV's assertion that participants "understood their communications were being transmitted over the internet" is a red herring. ECF No. 11-1, PageID.446 n.2. Communications made over videoconferencing platforms like Zoom can still qualify as "confidential" under § 632 and support a "reasonable expectation of privacy" for California constitutional and common law invasion of privacy claims. *In re Otter.ai Priv. Litig.*, No. 25-cv-06911-EKL, 2026 U.S. Dist. LEXIS 181703, at *26, 31 (N.D. Cal. Aug. 13, 2026) (plaintiff who alleged that he used Zoom to communicate "with a medical professional" about "deeply personal and private medical information" plausibly alleged a "confidential communication" under § 632 and a reasonable expectation of privacy for the California constitutional and common law invasion of privacy claims).

**D. Plaintiff Has Plausibly Alleged That He Had a Reasonable**

**Expectation of Privacy in His Meeting for the CIPA and California Constitutional and Common Law Invasion of Privacy Claims.**

For the same reasons stated in Sections II.B and II.C, Plaintiff had a reasonable expectation of privacy for purposes of his CIPA and California constitutional and common law invasion of privacy claims.

A reasonable expectation of privacy "rests on an examination of 'customs, practices, and physical settings surrounding particular activities.'" *Hernandez*, 47 Cal. 4th at 287 (citation omitted). The identity of the intruder, the extent to which the interaction could be seen and overheard, and the means of intrusion are factors relevant to societal expectations of privacy. *Id*. at 286-87. These factors weigh heavily in Plaintiff's favor. MeetingTV, a commercial entity, was a stranger to Plaintiff and the other attendees, and it infiltrated their access-controlled meeting for the sole purpose of recording and posting it on its Platform. MeetingTV intentionally circumvented the meeting's privacy protections, and recorded and published Plaintiff's sensitive communications, without the knowledge or consent of Plaintiff or any other attendee, and in violation of the explicit prohibition against such acts. MeetingTV hid its true identity and falsely represented a connection to the Sacramento-area school district for "the sole purpose of obtaining Plaintiff approval and gaining access to the meeting to conduct the unauthorized recording." ¶¶ 96, 105-106. *See Sanders*, 20 Cal. 4th at 911-12, 923 (plaintiff's expectation of privacy not unreasonable where an undercover reporter surreptitiously recorded and videotaped conversations that were later broadcast without the speaker's consent); *see also Dietemann,* 449 F.2d at 248 (clandestine photography of the plaintiff in his den and the recordation and transmission of his conversations without his consent warranted recovery for invasion of privacy). The outrage, surprise, and distress expressed by Plaintiff, other victims, and the media confirm MeetingTV is violating broad social norms and expectations. ¶¶ 54-74, 103-104. These allegations



COULSON P.C.

demonstrate that Plaintiff had a reasonable expectation of privacy against MeetingTV's unauthorized, deceptive access to and recording of his private communications without his consent or knowledge.

Plaintiff maintained a reasonable expectation of privacy even without absolute confidentiality. MeetingTV argues otherwise. *See* ECF No. 11-1, PageID.445 ("Plaintiff does not indicate any ability to exercise control . . . whether [participants] might repeat it . . . or share it with others"); PageID.447 n.2 ("does not allege Zoom provided any assurance of confidentiality"). Privacy is not an "all-or-nothing proposition." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 782 (N.D. Cal. 2019). "[T]he fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." *Id.* (quoting *Sanders*, 20 Cal. 4th at 916); *see also Sanders*, 20 Cal. 4th at 915 (a person may "reasonably expect privacy against the electronic recording of a communication, even though he or she had no reasonable expectation as to confidentiality of the communication's contents").[5]

For the same reasons, the meeting's group format is irrelevant. ECF No. 11-1, PageID.445 ("Plaintiff describes a virtual meeting that involved multiple participants . . . each of whom had access to the full content of the discussion"). Information "intended for or restricted to the use of a particular . . . group or class of persons" can be private. *In re Facebook,* 402 F. Supp. 3d at 782 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64 (1989)). "[T]he claim of a right of privacy is not so much one of total secrecy as it is of the right to *define* one's circle of intimacy." *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) (internal quotation marks omitted) (emphasis

[5] MeetingTV's assertion that Plaintiff must allege that Zoom provided confidentiality assurances or that its terms prohibited recording is yet another unsupported red herring. ECF No. 11-1, PageID.446, n.2 (citing no authority). Zoom is not alleged to have recorded the meeting—MeetingTV is, using its own external, non-Zoom recording tools.



COULSON P.C.

added). Plaintiff alleges the meeting was intended for a defined group that excluded MeetingTV, and that he implemented access controls and recording prohibitions to restrict access to and use of the shared information. ¶¶ 84, 88-89, 93-94.

Courts also consider whether a person "had the opportunity to consent to or reject the very thing that constitutes the invasion." *TBG Ins. Servs. Corp. v. Superior Court,* 96 Cal. App. 4th 443, 450 (2002). Here, Plaintiff alleges he would have excluded MeetingTV, but was "deprived of the opportunity to exclude [MeetingTV]" by its deception. ¶ 97.

Plaintiff further had a reasonable expectation of privacy given the sensitive, intimate, and personal nature of the intercepted information. *Doe v. Bonta*, 101 F.4th 633, 638 (9th Cir. 2024) ("the reasonableness of the expectation depends on the intimate nature of the information."). "The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Id.* (quoting *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990)). Plaintiff alleges that the meeting included discussion of attendees' children's "highly personal and sensitive experiences," including diagnoses, unmet needs, behavioral and developmental challenges, and the emotional and financial toll on their families. ¶¶ 91, 100-102. This information is highly intimate and personal, further justifying Plaintiff's expectation of privacy.

Plaintiff could not reasonably expect that MeetingTV—a commercial entity that was a stranger to him—would infiltrate and record his access-restricted Zoom meeting, which was held specifically for a subset of parents and caregivers within a specific school district, using false information intended to deceive him, and then rebrand it as a "webinar" for public viewing on its Platform. This intrusion directly contradicts MeetingTV's own claims that it does not have private meetings on its Platform, reflecting its awareness that doing so is offensive and in violation of privacy expectations and social norms. ¶¶ 26-28. This is a novel, offensive intrusion that no reasonable person in Plaintiff's position could have anticipated.



COULSON P.C.

These issues cannot be resolved against Plaintiff's well-pled allegations. Taken together and accepted as true, the FAC's allegations plausibly plead that Plaintiff hosted a private meeting not readily accessible to the general public, and that he had a reasonable expectation of privacy against MeetingTV's covert interception, recording, and publication of that meeting.

## III. PLAINTIFF HAS PLAUSIBLY ALLEGED AN INTERCEPTION UNDER ECPA AND CIPA (FIRST, SECOND, AND THIRD CAUSES OF ACTION).

MeetingTV argues that Plaintiff has not plausibly alleged the interception requirement for his ECPA and CIPA claims. ECF No. 11-1, PageID.444. This argument misapplies the law.

The ECPA requires an "acquisition contemporaneous with transmission." *Konop*, 302 F.3d at 878. The second clause of § 631(a) of CIPA requires an interception "in transit." Cal. Penal Code § 631(a). The analysis under CIPA is generally the same as under the ECPA. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

Here, the FAC alleges that MeetingTV used various technologies, including bots, artificial intelligence, browser extensions, and screen-capture technology, to record Plaintiff's meeting communications "simultaneously" and "in real time" as the meeting was conducted. ¶¶ 4, 15, 35-36, 95-98, 106, 109, 192-193. This is sufficient to allege the communications were intercepted "contemporaneous with transmission" and "in transit."[6] *See Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS-KSC, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024) (allegations of real-time interception sufficient to support CIPA's in-transit requirement). "[A] pleading standard to the contrary would require the CIPA

[6] MeetingTV cites no authority for its contention that Plaintiff must allege that it "tapped into the data stream" or "accessed the meeting platform's servers." ECF No. 11-1, PageID.444. This argument conflicts with case law interpreting the interception requirements. *See Esparza,* 2024 U.S. Dist. LEXIS 24429, at *3.



COULSON P.C.

plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny Opco, LLC*, No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *20 (S.D. Cal. Oct. 24, 2023).

MeetingTV cites no authority for the proposition that using screen-capture technology means the interception necessarily occurred after the communications were transmitted. Here, the FAC alleges that the recording occurred simultaneously with the live conversation. Nothing in the FAC alleges or supports a reasonable inference of any meaningful delay in capture.

## IV. PLAINTIFF HAS PLAUSIBLY ALLEGED THAT MEETINGTV WAS NOT A PARTY TO HIS MEETING AND THAT IT DID NOT HAVE PRIOR CONSENT TO INTERCEPT THE COMMUNICATIONS (FIRST, SECOND, AND THIRD CAUSES OF ACTION).

MeetingTV argues that it is not liable under the ECPA or CIPA because it was a party to Plaintiff's communications. ECF No. 11-1, PageID.447, 450. Among other problems, this argument ignores the allegations regarding MeetingTV's deceptive infiltration.

Under the ECPA and CIPA party exceptions, a person is not liable for intercepting or recording a communication to which they were a party. 18 U.S.C. § 2511(2)(d); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Courts perform the same analysis for both the ECPA and CIPA regarding the party exception. *Id.*

### A. Plaintiff Has Plausibly Alleged that MeetingTV Was Not a Party to His Private Meeting.

MeetingTV asserts that it was a party because Plaintiff alleges approving its registration for what it characterizes as his "public" meeting. ECF No. 11-1,

COULSON P.C.

PageID.447.[7] This argument distorts the law and ignores the FAC's allegations regarding MeetingTV's deceptive conduct.

MeetingTV is not a party, and its presence in the meeting does not make it less of an interceptor or eavesdropper. One cannot manufacture party status by deceptively or surreptitiously gaining unauthorized access to a person's private communications. This would, in effect, "render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608. As alleged, MeetingTV gained access to the meeting only by providing false identity information to deceive Plaintiff into thinking it was a member of the school district and to circumvent the access controls. ¶¶ 95-97, 106-109.

Only an "*intended* party" is exempt from liability under the party exception. *See Wright v. TrueCare Prop. Holdings, LLC*, No. 3:25-cv-00786-JES-BLM, 2025 U.S. Dist. LEXIS 229707, at *8 (S.D. Cal. Nov. 21, 2025) (emphasis added). Plaintiff neither knew of nor consented to MeetingTV's presence in the meeting, and he would have excluded it if he had known. ¶¶ 95-97, 101. Plaintiff cannot intend MeetingTV to be a party if he was not even aware it was there. Plaintiff's allegations of distress, devastation, fury, and offense upon learning of MeetingTV's presence are also consistent with the conclusion that it was not an intended party. ¶¶ 103-104.

Courts also often conclude that technology vendors that provide tools like tracking pixels or AI notetakers are not parties to a communication where such providers intercept, record, and use the intercepted information for their own business purposes. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024). In *Otter.ai*, the court concluded that the AI notetaker in the meeting qualified as a third party under CIPA because it allegedly collected, retained, and

[7] For the reasons stated in Section II.B, Plaintiff has plausibly alleged that his meeting was not accessible to the general public.



COULSON P.C.

COULSON P.C.

used the meeting communications, at least in part, for its own independent commercial purposes. 2026 U.S. Dist. LEXIS 181703, at *30.

This matter presents an even clearer case that MeetingTV was not a party. Unlike the technology providers in those cases, MeetingTV deceived Plaintiff into unknowingly giving it access to the communications and MeetingTV intercepted his communications solely for its own benefit. ¶¶ 95-97, 105-06, 108-09. If a tool that a party voluntarily brought into a meeting can still be treated as a third-party interceptor once it uses the data for its own purposes, a tool that infiltrated the meeting without any party's knowledge or consent—and used the data solely for its own commercial ends—is one a fortiori.

### B. Even if MeetingTV Could Be Considered a Party, Plaintiff Has Plausibly Alleged the Crime-Tort Exception for Purposes of the ECPA Claim.

The ECPA's party exception does not apply if the communication is intercepted for a criminal or tortious purpose. 18 U.S.C. § 2511(2)(d).

Plaintiff plausibly alleges that the primary motivation or determining factor in MeetingTV's conduct has been to injure Plaintiff tortiously. In particular, Plaintiff alleges that MeetingTV used his communications without his knowledge or consent to grow its WebinarTV Platform for its own commercial and financial gain in violation of CIPA and California's constitutional and common law right to privacy. ¶¶ 100-110, 205-262, 283-315. This is sufficient to allege the crime-tort exception under the ECPA. *See In re Otter.ai Priv. Litig.*, 2026 U.S. Dist. LEXIS 181703, at *20-21 (allegations that defendant "tortiously used their conversational data without their knowledge or consent to train its 'machine learning systems for its own pecuniary gain'" sufficient to plead crime-tort exception). MeetingTV's commercial purpose does not alter this conclusion. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) ("committing a tort and seeking a profit are not mutually exclusive").

COULSON P.C.

### C. Plaintiff Has Plausibly Alleged that MeetingTV Did Not Have Prior Consent.

Under the ECPA, the consent of one party is a complete defense. 18 U.S.C. § 2511(2)(d). However, under CIPA, an interceptor requires the prior consent of all parties. *See* Cal. Penal Code §§ 631(a), 632(a); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3-5 (9th Cir. May 31, 2022) (consent must be given before communication takes place). It should be apparent that one cannot consent to the presence of a party one does not know is there.

Plaintiff alleges that MeetingTV did not ask for or receive his or any other attendees' consent to intercept, record, and use the meeting communications before doing so and that he instituted a recording and distribution prohibition. ¶¶ 95, 101, 232, 291. Plaintiff also alleges he did not know about the recording or MeetingTV's presence in the meeting until MeetingTV contacted him a day later. ¶ 100. This is sufficient to plausibly allege that, under either statute, his communications were intercepted and recorded by MeetingTV without his or any other party's express consent. *See Javier,* 2022 U.S. App. LEXIS 14951, at *5; *see also Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (an affirmative defense may be resolved on a motion to dismiss where the "allegations in the complaint suffice to establish" the defense) (citation omitted)

The FAC's allegations are also sufficiently detailed even to meet the heightened pleading standard of Rule 9(b) for purposes of pleading a prima facie case that any purported consent was invalid based on deception or fraud. The FAC alleges: (a) who—MeetingTV, via a fake registrant or other technology, ¶¶ 95, 106, 109-110; (b) what—(i) affirmative misrepresentations—using false information in the registration and screening process, including "falsely representing a connection to the Sacramento-area special education community," ¶¶ 105-108; and (ii) fraudulent concealment—using a false identity and/or undetectable software to access Plaintiff's meeting, failing to disclose its purpose in attending, and failing to

disclose it was recording, ¶¶ 95-96, 100-101, 105-110; (c) when—in January 2026, ¶ 84; and (d) where—during the registration process and in Plaintiff's virtual meeting. ¶¶ 95-111.

## V. PLAINTIFF HAS PLAUSIBLY ALLEGED VIOLATIONS OF § 631(a) OF CIPA BECAUSE CLAUSES TWO, THREE, AND FOUR ARE NOT LIMITED TO INTERCEPTIONS OF TELEPHONE OR TELEGRAPH WIRES (THIRD CAUSE OF ACTION).

MeetingTV argues that all of the § 631 claims fail because the communications were not transmitted over telephone or telegraph wires. ECF No. 11-1, PageID.450. MeetingTV does not challenge any other element of Plaintiff's claims under the second, third, or fourth clauses of § 631(a).

Plaintiff agrees he cannot, and does not, seek to recover under the first clause of § 631. However, Plaintiff has plausibly alleged violation of § 631 under the second, third, and fourth clauses of § 631(a). ¶¶ 221-238. The second clause of § 631(a)[8] is not limited to communications passing over telegraph or telephone wires and applies to internet communications. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 107918, at *57 (N.D. Cal. Aug. 12, 2016); *see also Javier*, 2022 U.S. App. LEXIS 14951, at *3. Liability under the second clause also arises for communications "being sent from, or received at any place within [California]." Cal. Penal Code § 631(a). Plaintiff's allegations that he hosted and attended the virtual meeting in California plausibly allege that the communications were sent and received in California.

As claims under the third and fourth clauses can be derived from violations under the second clause, Plaintiff plausibly alleges those claims as well. *See* Cal. Penal Code § 631(a).

## VI. PLAINTIFF HAS PLAUSIBLY ALLEGED A VIOLATION OF

[8] Cal. Penal Code § 631(a) ("who willfully and without the consent of all parties to the communication . . . reads, or attempts to read").



COULSON P.C.

COULSON P.C.

**THE UCL (FIFTH CAUSE OF ACTION).**

MeetingTV argues that Plaintiff failed to sufficiently allege an unlawful, unfair, or fraudulent UCL claim for two reasons: (1) Plaintiff has not adequately alleged the underlying legal violations; and (2) Plaintiff lacks standing. ECF No. 11-1, PageID.451-52. MeetingTV misapplies the law in both instances.

**A. Plaintiff Has Plausibly Alleged an Unlawful Business Practices Claim.**

Based on the FAC's allegations, and the reasons herein, Plaintiff plausibly alleges that MeetingTV's conduct violates the ECPA, CIPA, California's constitutional right to privacy, and two California common law invasion of privacy torts, which is sufficient to plead an unlawful business practice. ¶ *268; see generally* FAC.

**B. A Legal Violation is Not an Element of Either an Unfair Business Practices or Fraudulent Business Practices Claim.**

A statutory or common law violation is not an element of either an unfair business practices or a fraudulent claim. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (describing three alternative tests for establishing an unfair business practice); *see Epperson v. Gen. Motors, LLC*, 706 F. Supp. 3d 1031, 1041 (S.D. Cal. 2023) (fraudulent prong requires allegations amounting to the circumstances constituting fraud). MeetingTV's conclusory statement that the FAC lacks any allegations of unfair or fraudulent business practices cannot carry its burden and is contradicted by the FAC's numerous allegations describing the unfair and fraudulent nature of MeetingTV's conduct. ¶¶ 263-282.

For the same reasons stated in Section IV.C, Plaintiff has plausibly alleged "fraud" with sufficient specificity to satisfy Rule 9(b) for the fraudulent business practices claim.

**C. Plaintiff Plausibly Alleges He "Lost Money or Property" For**

**Purposes of Standing Under the UCL.**

MeetingTV argues that Plaintiff lacks standing under the UCL because he fails to allege he "lost money or property." ECF No. 11-1, PageID.452-53.

Plaintiff alleges a loss of "money *or property*" from MeetingTV's conduct. Cal. Bus. & Prof. Code § 17204 (emphasis added)*; Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (UCL standing requires "economic injury"). Plaintiff pleads the loss of the economic value of his private communications and his ability to control their dissemination. ¶ 266.

"Privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024). Courts recognize personal information as property with economic value, and that the loss of personal information supports a UCL injury where it has marketplace value. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635-36 (N.D. Cal. 2021); *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725-BAS-WVG, 2022 U.S. Dist. LEXIS 208345, at *13 (S.D. Cal. Nov. 16, 2022) (loss of personal information supports an economic injury under the UCL if it has value on the marketplace). As alleged, MeetingTV's own business—publishing private meetings to grow its Platform's content and user base—confirms that market exists.

Plaintiff also pleads economic injury through the deprivation of his right to exclude MeetingTV and the public from his intangible property—his private communications. ¶¶ 83-111. *See Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024-25 (violation of the right to exclude a defendant from intangible property, such as sensitive financial data, diminishes "a present or future property interest" for purposes of *Kwikset*).

## VII. PLAINTIFF HAS PLAUSIBLY ALLEGED A PUBLIC DISCLOSURE OF PRIVATE FACTS CLAIM (SEVENTH CAUSE OF ACTION).



COULSON P.C.

MeetingTV argues that the public disclosure of private facts claim fails for two reasons: (1) the facts were not "private" because they were shared in public; and (2) they were of "public concern." Both arguments rest on improper extrinsic evidence[9] and ignore the applicable standards.

Plainly, a matter that is already public is not a private fact. *See Moreno*, 172 Cal. App. 4th at 1130. For the reasons stated in Section II, the disclosed facts qualify as private facts to satisfy the second element of this tort. MeetingTV's publication of the attendees' "children's highly personal and sensitive experiences," including diagnoses, behavioral and developmental challenges, and the "emotional and financial toll" on their families, on its public platform, without their knowledge or consent, is exactly the kind of dissemination this tort was designed to address. ¶¶ 91, 100-102. *See Coverstone v. Davies*, 38 Cal. 2d 315, 322-23 (1952) ("The gravamen of the tort is ordinarily the unwarranted publication by defendant of intimate details of plaintiff's private life."). Sharing a private fact with a pre-determined, carefully screened audience does not render the fact "public."

The disclosed facts were also not of "legitimate public concern." That element "relates to 'newsworthiness' and is subject to a three-part test involving the social value of the published facts, the depth of intrusion into ostensibly private affairs, and whether the person acceded voluntarily to a position of public notoriety." *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 631 (2001). The intimate details of the private-citizen attendees' lives, shared in a supportive space, serve no social value, constitute an egregious intrusion into their private affairs, and involve ordinary members of a community.

Even if "special education" is a public-interest topic, attendees' intimate details are at best tangentially related to it. Moreover, that some facts in the recording

[9] Even if the Court considered the Exhibits, the word "community" in a title and a phrase in a social media post do not establish that the information was "newsworthy." ECF No. 11-1, PageID.454.



COULSON P.C.

could serve a public purpose does not carry the rest along with it. Each disclosed fact must be independently assessed. *See Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1258Rptr. 3d 234, 250-51 (2017) (certain facts were of public interest, but sensationalized photos of medical procedures were not).

## VIII. IF ANY CLAIM REQUIRES DISMISSAL, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND.

If the Court grants MeetingTV's Motion in any respect, the Court should grant Plaintiff leave to amend. *See* Fed. R. Civ. P. 15. Rule 15(a) provides that a district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"[D]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). Any possible deficiencies can be cured through additional factual allegations.

## CONCLUSION

For the foregoing reasons, the Court should deny MeetingTV's Motion to Dismiss and accompanying Request for Judicial Notice.

Dated: September 18, 2026

Respectfully submitted,

**COULSON P.C.**

*/s/ Nicholas A. Coulson*

Nicholas A. Coulson, Esq. (SBN 358903)
13101 Washington Blvd., Suite 244
Los Angeles, California 90066
T: (313) 644-2685
E: nick@coulsonpc.com

*Counsel for Plaintiff and the Putative Classes*