Frederic G. Ludwig, III (CA Bar No. 205332)
eric.ludwig@ludwigiplaw.com
Robert J. Pribish (CA Bar No. 244642)
robert.pribish@ludwigiplaw.com
LUDWIG, APC
12463 Rancho Bernardo Road, No. 532
San Diego, California 92128
Telephone: 619-929-0873

Attorneys for Defendant MEETINGTV, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

DAVID GAINES, on behalf of himself and all others similarly situated,

Plaintiff,

v.

MEETINGTV, INC.,

Defendant.

Case No. 3:26-cv-3696-LL-DDL

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)**

*PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT*

Judge: Hon. Linda Lopez
Date: October 2, 2026

Action Filed: June 24, 2026
Trial Date: N/A

Defendant MEETINGTV, INC. hereby replies to the Opposition of Plaintiff DAVID GAINES (Docket No. 12) to its Motion to Dismiss (Docket No. 11).

## I. INTRODUCTION

Every claim in the First Amended Complaint ("FAC," herein (Docket No. 6), cited by paragraph number) rests on one false and unsupported premise: that Plaintiff's January 2026 Zoom session was a private, confidential communication that MeetingTV had no right to view, attend, or record.

Plaintiff's and SASSNA's own public pages said otherwise. The January event was listed "Public – Anyone on or off Facebook." The host wrote that "[a]ll are generally welcome to attend" and asked readers to "[p]lease share this event with others that are in WJUSD." Docket No. 11-2, Exs. 1–3 (hereinafter "RJN"); Robertson Decl. ¶¶ 3–7. Yet Plaintiff, who wrote "Public - Anyone on or off Facebook" and "[a]ll are generally welcome to attend" now contends that this event was not public and that the quotes are somehow out of context and not relevant.

The opposition asks the Court not to look at Plaintiff's own postings regarding the very meeting at issue in the FAC. The Court should look. Once it does, the privacy premise collapses and every claim fails. CIPA section 632, constitutional privacy, intrusion upon seclusion, and ECPA's "readily accessible" limitation all require an *objective* expectation that the conversation would not be overheard or recorded. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774–77 (2002); 18 U.S.C. § 2511(2)(g)(i). Special-education subject matter does not supply that element. A public-school funding fight is a matter of public concern for everyone. For these reasons, and as further explained below and in MeetingTV's initial moving papers, this Court should grant its motion, without leave to amend.

## II. THE COURT MAY CONSIDER THE PUBLIC PAGES

Plaintiff's social media postings are properly before this Court. When reviewing a Rule 12(b)(6) motion, courts may consider the FAC, documents incorporated by reference, and matters subject to judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Publicly available webpages qualify. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010). The Court notices what the pages said. It need not accept the FAC's legal conclusion that the January meeting "was not open to the general public," FAC, at ¶ 86, when the host's own listing says, "Public – Anyone on or off Facebook." Thus, this Court can and should grant MeetingTV's Request for Judicial Notice and draw its own conclusions concerning the purportedly "private" meeting.

That the meeting was public is apparent from Plaintiff's own admissions. All are "generally welcome," the social media posts say. SASSNA asks that the event and associated promotional materials thereof be shared, in which case such "sharing" presupposes an invitation for others to view, participate in, or otherwise engage with the meeting. RJN Exs. 1–3. Section 632(c) excludes a communication made "in a public gathering" or "in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Pen. Code § 632(c). A public Facebook invite plus a request for sharing is that very circumstance.

**A. Registration Does Not Create a Private Audience**

The opposition's fallback is the registration form, but it is of no moment. FAC, at ¶¶ 88–89. A form that collects a name and email before Zoom issues a link is how large public webinars are run. It is not a locked room; it is not security. It is not alleged in the FAC whether anyone examined the registration "form," or whether anyone was actually screened from the meeting. There is only the bald, unsupported assertion that "approval" was provided by Plaintiff without any details of what was actually done. See FAC, at ¶89. The Court should agree this is insufficient.

Nothing in *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), is to the contrary. *Konop* involves a password-protected website. Here the FAC indicates that the pages were public Facebook posts and a Zoom registration URL was provided that any internet user can open. And *Correia v. Lulu & Ga., Inc.*, No. 3:26-cv-01186-GPC-JLB, 2026 U.S. Dist. LEXIS 184095, at *16–17 (S.D. Cal. Aug. 12, 2026), is a website-tracking pleading order about a company's representation that it would not collect information in certain online spaces. It is not a holding that a publicly listed community Zoom becomes confidential because the host later says "no recording." Defendant anticipates this Court will agree.

## III. THE FAC CONTAINS NO ALLEGATIONS THAT THE MEETING WAS ACTUALLY PRIVATE OR THAT ACCESS WAS RESTRICTED.

The FAC alleges that “The WebinarTV Platform defines a “public” webinar as “open to the general public, meaning all who want to view the webinar are accepted” and a “private” webinar as one that “restricts access through various methods” such as requiring a passcode for approved participants, restricting admission, or employing other authentication processes.” FAC, at ¶ 27. The FAC cites WebinarTV’s FAQ and makes that page the measure of “public” versus “private.” FAC, at ¶¶ 26–28 & nn. 5–6. The Court may consider that document as incorporated by reference. *Khoja*, 899 F.3d at 1002. The same FAQ states that WebinarTV “indexes only free and public webinars,” that “[p]rivate webinars are not added,” that a public webinar is “open to the general public, meaning anyone can register and view the webinar at no cost,” and that “[p]rivate meetings are not supported.” See FAC, at 26, nn. 5-6 (links provided). The FAC does not allege that the January session used a passcode, an approved list, or per-user authentication. It alleges a registration form and later email notice. FAC, at ¶¶ 88–89, 100–105.

Plaintiff states “as alleged herein, Defendant systematically recorded and published meetings that satisfy their own definition of “private”—meetings that required passcodes, restricted admission through registration and screening, and employed authentication processes to limit attendance.” FAC, at ¶ 28. However, nowhere in the FAC is the follow up- showing Defendant made any recordings of any meetings that actually required, passcodes, restricted admission, or used screening and authentication processes.

Likewise, Plaintiff provides no support for its “upon information and belief that Defendant was “(d) circumventing or exploiting access controls, authentication measures, screening protocols, or registration approval processes that meeting hosts implemented specifically to restrict attendance.” FAC, at ¶ 35. This unsupported assertion underlies all of Plaintiffs specious claims for relief.

And Plaintiff admits that Defendant provided the meeting host with a link to withdraw the meeting. FAC, at ¶ 49-50. Plaintiff cites to unrelated news and inflammatory, self-serving reports having nothing to do with Plaintiff's meeting. FAC, at ¶¶ 54-76.

Plaintiff also cites snippets from public meetings that it claims were confidential. FAC, at ¶¶ 77-82. These meetings contained nothing to prevent general public access, and no security controls are alleged in the FAC to be present. At most there are sometimes notes in the commentary that they not be recorded. However, despite their textual descriptions, the FAC confirms the meetings were in fact public and accessible by all, and therefore non-confidential despite allegations to the contrary. None of the meetings cited in these paragraphs are alleged in the FAC to have employed anything to prevent public access, recording or monitoring.

<u>With respect to Plaintiff's January 2026 meeting, Plaintiff uses obtuse language to wrongly imply that the meeting was not open and available to the general public</u>. See FAC, at ¶86. While, Plaintiff states the meeting was "not" open to the general public, Plaintiff does not indicate what measures were taken to prevent anyone from attending. FAC, at ¶ 88. Plaintiff claims a "registration and approval process" was implemented but fails to state what this process entailed, other than a general sign up. FAC, at ¶¶ 88-90.

<u>Plaintiff incorrectly implies that there was a passcode to attend</u>, stating: "Registrants received the meeting credentials—including the meeting link and any required passcode." FAC, at ¶ 89. <u>However there is no allegation that in fact, a passcode was required for any meeting</u>! Plaintiff seeks to call upon the "assertion of fact" that passcodes were used through innuendo, without actually stating as much. In fact, Plaintiff's description of the meeting fails to identify any prohibitions put in place to prevent the public from attending. See FAC, at ¶¶89-91. So, if taken as true, that "any required passcode" was sent to registrants, there is no allegation here that the specific meeting included such a passcode, or was of the type which "required" a

passcode.

Plaintiff calls Defendant a "false" or "fake" registrant, but does not identify specific facts as to why Defendant was granted access, how many people attended, how many people were refused access or how 'access' was enforced. See FAC, at ¶¶ 96-98. In fact, Plaintiff goes on to allege how Defendant notified Plaintiff of the recording and how Plaintiff granted access to the "fake" email. See FAC, at ¶¶ 102-110.

The FAC's "fake registrant" theory does not supply the missing privacy, party-status, consent, or intrusion elements. Plaintiff alleges that MeetingTV obtained access by deception. FAC, at ¶¶ 96–98. The FAC never explains why deception was necessary to enter an event its organizer publicly labeled "Public – Anyone on or off Facebook," told readers that "[a]ll are generally welcome to attend," and asked them to share with others. RJN Exs. 1–3; FAC, at ¶¶ 86–89. Nor does the FAC identify any attendee qualification that MeetingTV could not satisfy truthfully, or any person who was actually refused. The FAC alleges a registration form and later "approval," not a passcode, an approved list, or per-user authentication. FAC, at ¶¶ 88–89, 105. That is the same definition of a "public" webinar Plaintiff attributes to WebinarTV's own FAQ. FAC at ¶¶ 26–28 & nn.5–6. An allegation that MeetingTV "lied to get in" assumes a closed circle. The organizer's pages, and the FAC's own description of how access was granted, describe an open one.

There are no allegations that Defendant bypassed any security measure, obtained a password or "infiltrated" anything. Rather, the allegations above indicate that the meeting was public, not password protected and merely required an email address to sign up, which Plaintiff admits to have accepted. FAC, at ¶ 105.

## IV. ALL CLAIMS FAIL

### A. No Interception

The FAC alleges a screen-capture or a browser extension after access to the Zoom session. FAC, at ¶¶ 37, 66, 95–98. Capture by a person who is admitted to a

Zoom meeting is plainly not an "interception" of a communication in transit. They are recording what has been communicated to them on their screen. Technology adjectives do not satisfy *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and this Court should rule accordingly.

### B. First Claim for Relief: Party Status and Consent - ECPA

ECPA's one-party consent rule bars liability where a party to the communication intercepts it, unless the intercept is for the purpose of committing a distinct criminal or tortious act. 18 U.S.C. § 2511(2)(d). "A recording has a criminal or tortious purpose under section 2511(1) when 'done for the purpose of facilitating some further impropriety, such as blackmail.'" *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022), quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). This criminal or tortious purpose must be separate and independent from the act of the recording. *Id.* ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious.") (citation omitted). Put another way, the independent purpose must be "essential to the actual execution of an illegal wiretap . . . [and] directly facilitate the criminal conduct." *United States v. McTiernan*, 695 F.3d 882, 890 (9th Cir. 2012); *see also Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010).

The recording party must also have the independent criminal or tortious purpose at the time the recording was made. *See Sussman*, 186 F.3d at 1203; *see also Caro*, 618 F.3d at 99 ("There is a temporal thread that runs through the fabric of the statute and the case law. At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act."). Joining a meeting advertised to "anyone on or off Facebook," is not a trespass. The crime-tort exception is circular: Plaintiff alleges the recording was tortious because it invaded privacy, and that it invaded privacy because it was recorded. The FAC pleads that the day after the January meeting, Plaintiff received notice that a recording had been posted as a

"webinar" and that he opened the posted page. FAC, at ¶¶ 100–102. This confirms that MeetingTV treated the session as a public webinar—the same characterization as the host's own pages.

**C. Second Claim for Relief: CIPA Section 632**

Section 632(a) provides liability those who "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication…" Section 632(c) defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering…." Here, the FAC provides no "circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto" as there are no allegations concerning how privacy was to be handled, how privacy was communicated to attendees, or efforts taken to screen attendees. In addition, the meeting was a "public gathering" as admitted by Plaintiff on its Facebook page.

**D. Third Claim for Relief: CIPA Section 631**

Section 631 requires, for liability, the unauthorized interception of communications while they are in the process of being transmitted, as in, for example, tapping a telephone line. "There are two seminal cases that frame the analysis of section 631 liability, *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975) and *Ribas v. Clark*, 38 Cal. 3d 355 (1985)." *Jones v. Tonal Sys.*, 751 F. Supp. 3d 1025, 1033 (S.D. Cal. 2024). In *Rogers*, Ulrich used a tape recorder jack installed in his telephone to record a conversation with Rogers, without Rogers' knowledge, and then played the conversation for a third party. *Rogers*, 52 Cal. App. 3d at 897-98. Relying on the legislative finding that the law is intended to prevent "eavesdropping," the appellate court held that a party to a conversation cannot "eavesdrop" under the law: "It is never a secret to one party to a conversation that the other party is listening to the

conversation; only a third party can listen secretly to a private conversation." *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 898 (N.D. Cal. 2023). In contrast, *Ribas*, on the other hand, involved a third-party clandestinely listening in on a conversation between two others, which constituted eavesdropping within the meaning of the statute. *Id.* at 360-61.

The *Rogers* and Ribas decisions support Defendant's proposition that recording a call at the other end of the line by a attendee to the call is not covered. In other words, there is no "interception" and no eavesdropping. Plaintiff still must plead non-party interception of contents without consent. He has not. Plaintiff mentions screen recording and other methods similar to a telephone user recording sound on their handset (FAC, at ¶266), which is plainly not covered as an "interception." Screen recording software copies the pixels on a display, which have already been received and which are stored in the device's memory.

### E. The Remaining Claims Fall with Privacy (Third to Seventh Claims for Relief)

The public nature of the meeting defeats the remaining claims. The UCL claim is derivative. Cal. Bus. & Prof. Code § 17200. Public disclosure of private facts requires a private fact that is not of legitimate public concern. *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214 (1998). The meeting for special-education related issues in a named public district, advertised as public, is not a "private fact" under *Shulman*. And intrusion/ privacy fail for the same missing expectation.

## V. LEAVE TO AMEND WOULD BE FUTILE

Plaintiff has already amended. The public character of these events is on the host's own Facebook page and Zoom pages which clearly indicate the public is welcome to attend. Dismissal should be without leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). This Court should so rule when dismissing Plaintiff's previously amended complaint.

## VI. CONCLUSION

The Court should grant the Request for Judicial Notice, dismiss the First Amended Complaint in its entirety, and deny leave to amend.

Dated: September 25, 2026

Respectfully Submitted

By: <u>*/s/ Frederic G. Ludwig, III*</u>

Frederic G. Ludwig, III
Robert J. Pribish
LUDWIG, APC
Attorneys for MEETINGTV, Inc.